IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

JOEL R. KASWELL,
3504 Turner Lane
Chevy Chase MD 20815,

    Plaintiff,

v.

    Case No.

WELLS FARGO BANK, NA,
    Serve on:
    CSC-Lawyers Incorporating
    Service Company,
      Resident Agent
    7 St. Paul Street, Suite 1660
    Baltimore, MD 21202,

    Defendant.

**DEMAND FOR JURY TRIAL**

FILED
JUL 8 2013
CIVIL DIV.
CIRCUIT COURT FOR
BALTIMORE CITY

## COMPLAINT

1.    Plaintiff Joel R. Kaswell ("Kaswell") wanted a loan modification from Wells Fargo Bank NA ("Wells Fargo"). After timely and faithfully making his monthly payments, he suffered a severe accident that interrupted his ability to make timely payments.

2.    Wells Fargo told him that they wanted to help him get a loan modification. In numerous letters, they stated "Our primary goal is helping you to continue to experience the pride of home ownership". This statement appeared in letters dated August 11, 2012 by Cedrica Rhynes a "Home Preservation Specialist", August 20, 2012 by Michelle Estes a "Home Preservation Specialist", August 22, 2012 by Michelle Estes a "Home Preservation Specialist", September 13, 2012 by Michelle Estes a "Home Preservation Specialist" and February 19, 2013 by Mary Evans a "Home Preservation Specialist".

3.    Wells Fargo's actions (or inactions) speak louder than its words.

4. After initially submitting a package in April, 2011 consisting of 83 pages, Kaswell was repeatedly told that he had to resubmit documents because his requests had expired because Wells Fargo did not timely act on his requests.

5. On May 24, 2011 he resubmitted documents in response to Wells Fargo's request though Wells Fargo did not provide any explanation as to why he had to resubmit the documents.

6. On July 7, 2011 he again resubmitted documents in response to Wells Fargo's request that did not provide any explanation as to why he had to resubmit the documents.

7. On September 6th or 7th, 2011, he again submitted documents in response to Wells Fargo's request though again Wells Fargo did not provide any explanation as to why he had to resubmit the documents.

8. Kaswell followed the above submissions with supplements on different occasions.

9. The New Year, 2012, brought more of the same. On January 31, 2012, Kaswell was told by Wells Fargo to submit additional documents because of a lost filing.

10. On February 7, 2012, Kaswell resubmitted because his application had expired according to Wells Fargo. This was followed by three supplements required in that same month.

11. On April 11, 2012, Kaswell had to resubmit again allegedly because the application had expired.

12. In June, 2012 Kaswell was told by Wells Fargo that he had to submit additional documents to reopen his expired application under a new policy. He was also told that Wells Fargo needed proof that his house was no longer listed for sale.

13. Kaswell provided proof that a listing agreement had ended. After submitting the documentation that Wells Fargo requested, Kaswell was told that his request for a loan

2

modification was denied since he was seeking a short sale – the exact opposite of what the papers he submitted conveyed to anyone who bothered to read it.

14. After spending so much time and effort Wells Fargo informed him of its "sincere regret" by its September 24, 2012 letter by Kathleen Wengert that he would have to resubmit all documents again because Wells Fargo had placed his loan in liquidation status due to Wells Fargo's imaging department mislabeling the document relating to his listing.

15. Kaswell could no longer believe that Wells Fargo's actions and inactions over the year and half he spent seeking a loan modification were anything less than an intentional plan to thwart his efforts to obtain a loan modification.

16. During the course of his good faith efforts to obtain a loan modification, Kaswell was told many amazing things by successive Wells Fargo's "Home Preservation Specialists" including (i) his papers were "unavailable", "lost" and "we don't keep them" by Cedrica Rhynes, including on June 29, 2012, and he would again have to resubmit his documents by and (ii) his profit and loss submission was insufficient because it only showed a profit and no loss by Cedrica Rhynes on April 17, 2012 ; and (iii) he was told by Cedrica Rhynes on August 13, 2012 he needed to stop sending cover letters because the "Home Preservation Specialist" had to read them.

17. Kaswell dutifully submitted documents at least 20 different times to Wells Fargo by USPS, fax and Federal Express.

18. Kaswell dealt with at least 11 different "Home Preservation Specialists" at Wells Fargo in his quest for a loan modification. The "Home Preservation Specialists" included Harold Lovelady, Cedricaa Rhynes, Courtney Hillard, Kathy Jackson, Michelle Estes, Mary Evans and

3

some for which no last name was provided: Joanne, Tina, Lisa, Brent and Jennifer. Plaintiff also dealt with Kathleen Wengert who identified herself as a "Written Customer Contact"

19. In all, Mr. Kaswell's efforts to obtain a home loan modification have been thwarted by the Wells Fargo Home Preservation Specialists that he was assigned.

20. Since Mr. Kaswell never imagined that Wells Fargo actually had no interest in helping as it professed, Mr. Kaswell proceeded to spend a considerable amount of time and costs to prepare and deliver documents repeatedly to Wells Fargo. But for Wells Fargo's false representations – that it wanted to help him get a loan modification – and Wells Fargo's failure to disclose that its real goal was to make the process so difficult and frustrating that he would simply give up, Mr. Kaswell would not have spent the amount of time and costs that he did engaging in what he thought was a worthwhile endeavor to save his home but which Wells Fargo knew would end badly for him. Further, this and numerous statements made by "Home Preservation Specialists" led Kaswell to believe that there was an imminent modification to be and the amount necessary to bring it current grew beyond his means.

21. Wells Fargo then proceeded to pursue a foreclosure action against him.

22. Unable to obtain any meaningful consideration for a home loan modification, Kaswell filed for bankruptcy relief under Chapter 7 followed by a Chapter 13 proceeding in an effort to save his home.

23. Kaswell brings this action against Wells Fargo for its unfair or deceptive practices as well as for violation of statutory consumer protection laws.

## II. THE PARTIES

24. Plaintiff Joel R. Kaswell is an individual resident of Montgomery County and resides at 3504 Turner Lane, Chevy Chase, MD ("the Property").

25. Defendant Wells Fargo does business in the State of Maryland. The resident agent for Wells Fargo is CSC-Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 1660, Baltimore, MD 21202. Wells Fargo also does business as Wells Fargo Home Mortgage or America's Servicing Company. Wells Fargo regular conducts business in Baltimore City, Maryland.

### III. JURISDICTION

26. This Court has jurisdiction and venue of the matters asserted herein.

27. Venue before this Court is proper since the Defendant regularly transacts business in Baltimore City.

### COUNT I – VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT (15 U.S.C. §1691(d))

28. Mr. Kaswell reiterates and incorporates every allegation above as if set forth herein in full and adds:

29. Mr. Kaswell is an "applicant" as governed by ECOA, 15 U.S.C §1691a(b).

30. Wells Fargo is a "creditor" as governed and defined by ECOA, 15 U.S.C. §1691(a)(e) at all times relevant hereto.

31. 15 U.S.C §1691(d)(1) provides that "within thirty days...after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."

32. The accompanying Regulation B, issued by the Board of Governors of the Federal Reserve System pursuant to ECOA, further provides: "A creditor shall notify an applicant of action taken within: (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R §202.9(a)(1)(i).

5

33. Additionally, 15 U.S.C. §1691(d)(2) requires "that each applicant against whom "adverse action" is taken shall be entitled to a statement of reason for such action from the creditor." 15 U.S.C. §1691(d)(2).

34. 15 U.S.C. §1691(d)(6) defines "adverse action" as a denial or revocation of "credit", a change in terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or substantially the terms requested." 15 U.S.C. §1691(d)(6)

35. The term "credit" means the right granted by a debtor to defer payment of a debt or to incur debts and defer its payment...and defer payment thereof. 15 U.S.C. § 1691a (d); 12 C.F.R. §202.2(j).

36. The applications for modifications of his loan terms by the Plaintiff were applications for "credit" as defined by 15 U.S.C. § 1691a(d) and 12 C.F.R. §202.2(j).

37. The Defendant's acceleration of Plaintiff's note was a revocation of credit.

38. Wells Fargo failed to provide an adverse action notice upon revocation of his credit.

39. Kaswell provided Wells Fargo with completed applications for credit.

40. Wells Fargo failed to evaluate Kaswell's loan modification requests in good faith and a make any determination on the applications after receiving the completed loan modification applications.

41. Instead, Wells Fargo grossly ignored its responsibility to respond to Mr. Kaswell's mitigation requests as proscribed in Md. Code Regs. 09.03.06.20 and proceeded to threaten or engage in illegal foreclosure actions.

6

42. In failing to evaluate the applications for credit in a manner required by the Md. Code Regs. 09.03.06.20, Wells Fargo effectively denied Kaswell credit, and thereby took "adverse action" – as defined by ECOA – on his applications.

43. Kaswell never received written notice from Wells Fargo or anyone else of the adverse action taken on his applications for loan modifications or in regards to the revocation of credit.

44. Additionally, Wells Fargo's letters were not in compliance with the notification requirements set forth in ECOA, 15 U.S.C. §1691(d)(2), as the notification failed to provide Plaintiff with a specific, truthful statement of written reasons for the adverse action taken.

45. The above failure of Wells Fargo to notify Kaswell of the adverse actions taken on his application within thirty days from receipt of their completed application for credit or revocation of his credit as mandated by 15 U.S.C §1691(d)(1), §1691(d)(2) and 12 C.F.R §202.9(a)(1)(i) was a substantive violation of ECOA.

46. As a result of the above ECOA violations, Kaswell has suffered substantial actual damages in the following:
   a. the loss of the rights to explain or quickly rectify and address any errors or problems in their applications for credit;
   b. the assessment of extra fees and charges by Wells Fargo that accrued due to its delays in responding the Plaintiff's requests for credit;
   c. the loss of the credit itself; and
   d. frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

47.     As a result of the above alleged ECOA violations, Wells Fargo is liable for actual damages pursuant to 15 U.S.C. §1691(e)(a), for punitive damages against Wells Fargo pursuant to 15 U.S.C. §1691e(b) and for attorneys fees and costs pursuant to 15 U.S.C. §1691(e)(d) and 12 C.F.R. §202.16(b).

WHEREFORE, Plaintiff prays this Court to award the following relief against Wells Fargo for its violation of ECOA:

A. Actual damages in a sum in excess of $75,000 pursuant to 15 U.S.C. §1691 (e)(a).

B. Punitive Damages in the amount of $500,000 against Wells Fargo pursuant to 15 U.S.C. §1691e(b).

C. Attorneys fees and costs pursuant to 15 U.S.C. § 1691e (d).

### COUNT II – VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT MD CODE, COMM. LAW, § 14-201 *et seq.*

46.     Mr. Kaswell realleges and incorporates by reference the foregoing allegations.

47.     By threatening to foreclose, Wells Fargo has acted as a collector, directly and indirectly, as that term is defined by § 14-201(b) of MD. CODE, COMM. LAW.

48.     Mr. Kaswell is a person as defined by § 14-201(d) of MD. CODE, COMM. LAW.

49.     The underlying mortgage transaction and threat of foreclosure related to this complaint constitutes a "consumer transaction" as defined by § 14-201(c) of MD. CODE, COMM. LAW.

50.     Wells Fargo has claimed, attempted, or threatened to enforce a right with knowledge that their right did not exist under Maryland or Federal law until they complied with ECOA, the Maryland Equal Credit Protection Act, and Md. Code Regs. 09.03.06.20.

51. Mr. Kaswell's damages as alleged herein were proximately caused by Wells Fargo's actions including damages for emotional distress or mental anguish suffered with or without accompanying physical injury as well as those damages described above.

WHEREFORE, Plaintiff prays this Court to award the following relief against Wells Fargo for its violation of the Maryland Consumer Debt Collection Act:

A. A money judgment of all damages caused by Wells Fargo's actions, directly or indirectly, in an amount in excess of $75,000;

B. His costs including attorneys' fees as well as pre- and post-judgment interest;

C. Such other and further relief as the nature of their cause may require.

### COUNT III – VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*

52. Mr. Kaswell realleges and incorporates by reference the foregoing allegations.

53. The mortgage loan transactions and foreclosure practices as set forth herein of the Wells Fargo against the Plaintiff are governed by the Consumer Protection Act, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*

54. Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The prosecution of a foreclosure action involves both the extension of credit and the collection of debts.

55. The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

56.     The Defendant Wells Fargo made the following misrepresentations of fact that made its statements misleading to Kaswell:

> a. It would consider him for a loan modification;
>
> b. that it had not received adequate information to proceed with a loan modification;
>
> c. That his applications had expired and he had to resubmit for Wells Fargo to consider his applications for loan modifications;
>
> d. That his submissions were inadequate because the profit and loss he submitted only showed a profit and no loss;
>
> e. that its primary goal was to help him to continue to experience the pride of home ownership;
>
> f. That Wells Fargo was interested in helping him obtain a loan modification; and
>
> g. omitted to inform that in fact that Wells Fargo was not interested in helping him obtain a loan modification.

57.     Wells Fargo failed to comply with applicable law in connection with the revocation of his credit and denial of his credit applications.

58.     By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, the Defendant has committed unlawful or deceptive trade practices in violation of the Maryland Consumer Protection Act. Sec. 13-301(1) and (3) and Sec. 13-303(4) ("MCPA").

59.     The Defendant's conduct, as set forth above, had the capacity, tendency or effect of deceiving Mr. Kaswell, who in fact was deceived or misled, causing injury and loss through:

a.      the unfair or deceptive prosecution based upon incomplete and bogus responses to requests for modifications of their loan terms, or threat of prosecution of a foreclosure action by Defendant through their authorized agents.

b.      the unfair or deceptive practices of charging late fees and other charges which resulted while they allegedly reviewed his loan modification requests.

59.     Mr. Kaswell's damages as alleged herein were proximately caused by Well Fargo's actions including damages for emotional distress or mental anguish suffered with or without accompanying physical injury as well as those damages described above.

WHEREFORE, Mr. Kaswell prays for the following relief against Defendant for its violations of the Maryland Consumer Protection Act:

A. He be awarded as part of this claim a sum in excess of $75,000 for compensatory damages as a result of the Defendant's' direct and indirect, unfair or deceptive practices as described herein including the Defendant's failure to comply with ECOA, the Maryland Equal Credit Protection Act, and Md. Code Regs. 09.03.06.20;

B. He be awarded his reasonable attorney's fees and costs; and

C. That his claim should include such other and further relief as the Court deems just and proper.

### COUNT IV – MARYLAND MORTGAGE FRAUD PROTECTION ACT, MD. ANN. CODE, REAL PROP. § 7-401 MD. REAL PROP., *et seq.*

60.     Mr. Kaswell realleges and incorporates by reference the foregoing allegations.

61.     The Maryland Mortgage Fraud Protection Act, Md. Ann. Code, Real Prop. § 7-401 MD. REAL PROP., *et seq.* ("MMFPA") governs the relationship between the Defendant with the Plaintiff.

11

62.	MD ANN. CODE., REAL PROP. § 7-401 (c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs is record owner of the residential property in question and therefore is a Homeowner.

63.	MD ANN. CODE., REAL PROP. § 7-401 (e) provides "Mortgage lending process...includes [t]he...servicing...of a mortgage loan."

64.	MD ANN. CODE., FINANCIAL INSTITUTIONS CODE. § 11-501 (k)(1) provides: "Mortgage loan" means any loan or other extension of credit that is: (i) Secured, in whole or in part, by any interest in residential real property in Maryland; and (ii) If for personal, household or family purposes, in any amount."

65.	The MMFPA works to protect the interests of all parties to mortgage issues in Maryland from misstatements, misrepresentations and omissions; in this instance the MMFPA works to protect borrowers like Mr. Kaswell from mortgage companies like the Defendant and ensure a level, fair playing field between all borrowers and professionals.

66.	The Plaintiff is a homeowner in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the servicing of their residential mortgage loans as it relates to a foreclosure action or threat of foreclosure which is an attempt to collect a certain sum on the mortgage transaction.

67.	MD ANN. CODE., REAL PROP. § 7-401 (d) provides:

"Mortgage fraud" means any action by a person made with the intent to defraud that involves:

1. Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;
2. Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement,

misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

3. Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

4. Conspiring to violate any provisions of item of (1), (2) or (3) of this section...

68. The Defendant has committed Mortgage Fraud by:

a. Knowingly making, as described herein, deliberate misrepresentations and omissions during the mortgage lending process as described in ¶ 56 above with the intent that the misrepresentations and omission be relied on by the Plaintiff;

b. Knowingly using or facilitating, as described herein, the use of any deliberate misrepresentations and omissions during the mortgage lending process with the intent that the misstatements, misrepresentations, and omissions be relied on by the Plaintiff.

69. Plaintiff has been damaged by the Defendant's deliberate misrepresentations and omissions during the mortgage lending process as stated herein including the ¶¶ above.

70. MD ANN. CODE., REAL PROP. CODE § 7-401 (g) provides:

Pattern of mortgage fraud means two or more incidents of mortgage fraud that:

• Involve two or more residential real properties; and

• Have similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics.

71. Upon information and belief the Defendant has engaged in a Pattern of Mortgage Fraud by committing similar acts against two or more Maryland residential properties with similar intents, results and methods of commission as that which was committed by Defendant against the Plaintiff as described herein.

WHEREFORE, Plaintiff prays this Court to award the following relief against Wells Fargo for its violation of the MMFPA:

A. He be awarded the sum of in excess of $75,000 for compensatory damages as a result of the Defendant's illegal practices and misrepresentations;

B. He be awarded as part of the claim their reasonable attorney's fees and costs; and

C. That his claim should include such other and further relief as the Court deems just and proper.

Respectfully Submitted,

_____
Scott C. Borison, Esq.
borison@legglaw.com

and also represented by:
Phillip R. Robinson, Esq., Of Counsel
probinson@legglaw.com

Janet Legg, Esq.
legg@legglaw.com
Legg Law Firm, LLC.
5500 Buckeystown Pike
Frederick, Maryland 21703
(301) 620-1016
Fax: (301) 620-1018

DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Respectfully Submitted,

_____
Scott C. Borison, Esq.

14