**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(BALTIMORE DIVISION)**

JOEL R. KASWELL,                       :
                                       :
        Plaintiff,                     :
                                       :
v.                                     :
                                       :    Case No.  13-CV-2315-RDB
WELLS FARGO BANK, NA,                  :
                                       :
        Defendant.                     :

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Joel R. Kaswell ("Kaswell") for his opposition to the Motion to Dismiss (the "Motion") filed by the Defendant, Wells Fargo Bank NA ("Wells Fargo") alleges and states:

I. INTRODUCTION

Plaintiff's Complaint sets forth four causes of action against the Defendant. The complaint includes claims under the Equal Credit Opportunity Act, 15 U.S.C.A. § 16911 et seq. (ECOA), the Maryland Consumer Protection Act, § 13-301 et seq. of the Md. Comm. Law Article (MCPA), the Maryland Mortgage Fraud Prevention Act § 7-401 et seq. of the Md. Real Property Article (MMFPA) and the Maryland Consumer Debt Collection Act, § 14-201 et seq. of the Md. Comm. Law Article (MCDCA). Defendant moves to dismiss all of the Plaintiff's claims. As explained below, the Plaintiff has stated plausible claims under each Act above. Therefore, the Defendant's Motion should be denied.

**A. PLAINTIFF'S ECOA CLAIMS**

    1. **PLAINTIFF'S RIGHT TO AN ECOA NOTICE WHEN HIS CREDIT WAS REVOKED.**

The Plaintiff's complaint raises several claims against Wells Fargo relating to the mortgage loan between the parties. The Plaintiff includes claims relating to the failure of the Defendant to provide proper notices required by ECOA, 15 U.S.C.A. § 1691(d) based on (i) the revocation of credit and (ii) in connection with loan modification efforts that were invited by Wells Fargo. See Plaintiff's Complaint at ¶¶ 33-40. The Defendant's motion to dismiss does not address or even mention Plaintiff's ECOA claims relating to the revocation of his credit although this Defendant is aware that it must provide an ECOA notice when it revokes credit. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1210-1211 (9th Cir. 2013). [1]

In *Schlegel*, the Court held that complaint stated a claim under ECOA because by accelerating the installment loan and demanding payment in full, Wells Fargo had taken an adverse action based on revocation of credit under 15 U.S.C.A. § 1691(d)(6). The adverse action (revocation of credit) required Wells Fargo to comply with ECOA's requirement that it provide the notices and information under 15 U.S.C.A. § 1691(d). Defendant's Motion to Dismiss does not address this issue. The Defendant's motion to dismiss the Plaintiff's ECOA claim fails because Plaintiff has stated a claim under ECOA based on Wells Fargo's failure to comply with ECOA when it took an adverse action.

    2. **PLAINTIFF'S RIGHT TO AN ECOA NOTICE UNDER § 1691(d)(1).**

Defendant asserts that the portion of the Plaintiff's ECOA claim that relates to the Plaintiff's loan modification applications fails because he was in default. In *Piotrowski*

---

[1] Judge Garbis of this Court sat by designation on the 9th Circuit panel that decided the *Schlegel* case.

*v. Wells Fargo Bank, N.A.* 2013 WL 247549 (D.Md., 2013) the *Piotrowski* court first rejected Wells Fargo's argument that the provisions of 15 U.S.C. § 1691 (d)(1) and (2) did not create independent obligations on a creditor. The Court held the subsections created independent obligations on a creditor. 2013 WL 247549, 6. Further, the obligation under § 1691 (d)(1) could not be ignored by a creditor because a borrower was in default. Id. Plaintiff has alleged that the Defendant violated the provisions of § 1691(d)(1). See Complaint at ¶¶ 31, 43 and 45. Therefore, the Defendant's motion to dismiss Plaintiff's ECOA claim under § 1691(d)(1) fails since the Defendant's argument is premised on the erroneous argument that it has no obligation under § 1691(d)(1) if the borrower is in default.

3. **PLAINTIFF'S CLAIMS UNDER § 1691(d)(2).**

The Plaintiff recognizes that the *Piotrowski* court held that a borrower in default was not entitled to the information under § 1691(d)(2). Plaintiff respectfully submits that the conclusion is inconsistent with the statute itself since "adverse actions" under ECOA includes a revocation of credit. See 15 U.S.C.A. § 1691(d)(6). The *Schlegel* Court held that one way that ECOA addresses adverse actions is the notice requirement under 15 U.S.C.A. § 1691(d)(2). *Schlegel,* 720 F.3d at 1210.

An adverse action includes a revocation of credit based on an actual default or alleged default. 720 F.3d at 1211. Adverse actions therefore involve borrowers in default. The only limitation included by Congress on notices to a borrower in default against whom adverse action has been taken is a borrower in default who seeks additional credit. See 15 U.S.C.A. § 1691(d)(6)(" Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously

3

established credit limit.") In the absence of any claim that the Plaintiff sought additional credit, Congress' limitation on adverse actions to borrowers in default does not apply. Plaintiff has stated a claim under 15 U.S.C.A. § 1691(d)(2).

**4. PLAINTIFF WAS AN APPLICANT. DEFENDANT NEVER NOTIFIED HIM OF ANY INCOMPLETE APPLICATION.**

Defendant argues that Plaintiff's complaint fails to establish he was an applicant. Plaintiff alleged that he had been told a number of times that he had to resubmit because his "application" had expired. See Complaint, ¶¶ 10, 11, 12. Under ECOA an application consists of any:

> oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested…A completed application means an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral). The creditor shall exercise reasonable diligence in obtaining such information.

12 CFR § 202.2 (f).

The Plaintiff's complaint alleges that he provided the Defendant the information that was requested by the Defendant on numerous occasions. See Complaint at ¶¶ 4-13, 17. Further, that he was told his applications had expired on numerous occasions. *Id.* There is no indication or claim by the Defendant that the Plaintiff did not conform to the information regularly obtained by the Defendant in connection with the modification that he sought.

Further, if the Defendant claims that he submitted incomplete applications, Defendant was under a duty to notify Plaintiff that he had submitted an incomplete application. See 12 CFR § 202.9 (a)(1)(ii)(requiring notice to be given within 30 days

after taking adverse action on an incomplete application). There are no allegations that Defendant gave any notice of incomplete applications. The Plaintiff submitted applications for credit to the Defendant.

## B. PLAINTIFF'S STATE LAW CLAIMS

### 1. PLAINTIFF HAS ALLEGED VIOLATIONS OF THE MCPA AND MMFPA.

The Defendant's arguments relating to the state law claims rests on the assertion that if a borrower is in default, he is stripped of any protections. As demonstrated above, this is simply untrue under all of ECOA and it is equally untrue of the Maryland state law claims.  In *Piotrowski,* the Court held that the borrower could "proceed with MCPA claim to the extent it alleges that Wells Fargo's representations and omissions misled him into believing that he was actually being considered for a permanent loan modification." 2013 WL 247549, 13.

The *Piotrowski* court further held "[b]ecause Mr. Piotrowski states an MCPA claim based on Wells Fargo's alleged representations and omissions about its consideration of his loan modification requests, the complaint also states an MMFPA claim based on the same conduct since the borrower's MCPA claims. 2013 WL 247549, 13. The same is true here.

The common facts alleged by Kaswell support both his MCPA and MMFPA claims.  Plaintiff has alleged that he was misled by the Defendant. See Complaint, ¶¶ 15-20. If a lender misleads or makes misrepresentations to a borrower in connection with loan modifications, a borrower can and should be able to assert a claim under both the MCPA and the MMFPA.

2. **PLAINTIFF HAS ALLEGED RELIANCE AND DAMAGES.**

Defendant argues that the Plaintiff's MCPA claim fails because the Plaintiff has not alleged either reliance or damages. The Defendant ignores that the Plaintiff has alleged both. In ¶ 20 of his Complaint, Kaswell states and alleges:

> Since Mr. Kaswell never imagined that Wells Fargo actually had no interest in helping as it professed Mr. Kaswell proceeded to spend a considerable amount of time and expense to prepare and deliver documents repeatedly to Wells Fargo. But for Wells Fargo's false representations – that it wanted to him get a loan modification – and Wells Fargo's failure to disclose that its real goal was to make the process so difficult and frustrating that he would simply give up, Mr. Kaswell would not have spent the amount of time and costs that he did engaging in what he thought was a worthwhile endeavor to save his home..

Plaintiff's Complaint at ¶ 20.

While the Plaintiff has alleged "but for" causation, a case cited by the Defendant, *Bank of America, N.A. v. Jill P. Mitchell Living Trust,* 822 F.Supp.2d 505, 532 (D.Md.,2011) noted, to the extent that reliance must be shown for a MCPA claim, the standard is not "but for" causation. [2] In *Bank of America, N.A. v. Jill P. Mitchell Living Trust,* 822 F.Supp.2d 505, 532 (D.Md.,2011), the court stated that "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice" citing two Maryland cases that rejected a "but for" standard. The *Mitchell* court concluded the "quantum of evidence on which a fact-finder could

---

[2] As the noted by the court in *Tait v. BSH Home Appliances Corp.* 289 F.R.D. 466, 475 - 476 (C.D.Cal.,2012), "*Mitchell* merely stands for the proposition that a person who is not exposed to a misrepresentation cannot sue for a violation of the MCPA. As Plaintiff explains, the court in *Mitchell* simply held that the wife could not bring a counterclaim based on oral misrepresentations and omissions in communications to which she was never exposed." The court's decision in *Mitchell* only addressed the facts before it that showed the alleged misrepresentations were never made to the wife. Plaintiff here contends that he received all of the communications at issue for his claims.

reasonably conclude that an alleged misrepresentation substantially induces a consumer's choice is relatively low." *Id.* The Plaintiff has met the standard.

Plaintiff has also alleged damages. In addition to the out of pocket damages alleged in ¶ 20, the Plaintiff has also alleged that he suffered emotional distress proximately caused by the Defendant's deceptions and misrepresentations. See Plaintiff's Complaint at ¶ 59. The Plaintiff's complaint should not be dismissed.

### 3. PLAINTIFF HAS GIVEN SUFFICIENT DETAILS OF HIS CLAIMS BASED ON MISREPRESENTATIONS AND DECEPTION.

Plaintiff's complaint includes the time, content and manner of the representations and omissions that support his claims under the MCPA and MMFPA. The Plaintiff complaint includes the following allegations:

> 2. Wells Fargo told him that they wanted to help him get a loan modification. In numerous letters, they stated **"Our primary goal is helping you to continue to experience the pride of home ownership"**. This statement **appeared in letters dated August 11, 2012 by Cedrica Rhynes a "Home Preservation Specialist", August 20, 2012 by Michelle Estes a "Home Preservation Specialist", August 22, 2012 by Michelle Estes a "Home Preservation Specialist", September 13, 2012 by Michelle Estes a "Home Preservation Specialist" and February 19, 2013 by Mary Evans a "Home Preservation Specialist"**.

Plaintiff's Complaint at ¶ 2. (emphasis added)

> 4. After initially submitting a package in April, 2011 consisting of 83 pages, Kaswell was repeatedly told that he had to resubmit documents because his requests had expired because Wells Fargo did not timely act on his requests.
> 5. On May 24, 2011 he resubmitted documents in response to Wells Fargo's request though Wells Fargo did not provide any explanation as to why he had to resubmit the documents.
> 6. On July 7, 2011 he again resubmitted documents in response to Wells Fargo's request that did not provide any explanation as to why he had to resubmit the documents.
> 7. On September 6th or 7th, 2011, he again submitted documents in response to Wells Fargo's request though again Wells Fargo did not provide any explanation as to why he had to resubmit the documents.

8. Kaswell followed the above submissions with supplements on different occasions.

9. The New Year, 2012, brought more of the same. On January 31, 2012, Kaswell was told by Wells Fargo to submit additional documents because of a lost filing.

10. On February 7, 2012, Kaswell resubmitted because his application had expired according to Wells Fargo. This was followed by three supplements required in that same month.

11. On April 11, 2012, Kaswell had to resubmit again allegedly because the application had expired.

12. In June, 2012 Kaswell was told by Wells Fargo that he had to submit additional documents to reopen his expired application under a new policy. He was also told that Wells Fargo needed proof that his house was no longer listed for sale.

Plaintiff's Complaint at ¶ ¶ 4-12.

14. After spending so much time and effort Wells Fargo informed him of its "sincere regret" by its September 24, 2012 letter by Kathleen Wengert that he would have to resubmit all documents again because Wells Fargo had placed his loan in liquidation status due to Wells Fargo's imaging department mislabeling the document relating to his listing.

Plaintiff's Complaint at ¶ 14.

16. During the course of his good faith efforts to obtain a loan modification, Kaswell was told many amazing things by successive Wells Fargo's "Home Preservation Specialists" including (i) his papers were "unavailable", "lost" and "we don't keep them" by Cedrica Rhynes, including on June 29, 2012, and he would again have to resubmit his documents by and (ii) his profit and loss submission was insufficient because it only showed a profit and no loss by Cedrica Rhynes on April 17, 2012 ; and (iii) he was told by Cedrica Rhynes on August 13, 2012 he needed to stop sending cover letters because the "Home Preservation Specialist" had to read them.

Plaintiff's Complaint at ¶ 16.

Pleadings are generally required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.8(a)(2). In addition each allegation must be "simple, concise and direct." *Id*. at 8(d)(1). However, when asserting claims based in fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).

This Court recently addressed the standard imposed by Rule 9(b):

> To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." Johnson v. Wheeler, 492 F.Supp.2d 492, 509 (D.Md.2007). A court "should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.1999).

*Yarn v. Hamburger Law Firm, LLC,* 2013 WL 5375462, 3 (D.Md. 2013).

The Plaintiff's complaint includes details of the date and manner of the misrepresentations and deceptions upon which he relies for his claims. The Plaintiff has identified letters dated August 11, 2012, August 20, 2012, August 22, 2012, September 13, 2012 and February 13, 2013 in ¶ 2 of his Complaint and September 24, 2012 in ¶ 14. He also identified dates that Wells Fargo made statements that he allegedly needed to resubmit his documents, e.g. February 7, 2012, April 11, 2012, June, 2012 in ¶¶ 10,11 and 12 of his Complaint. Additionally, the Plaintiff summarized the grounds upon which he bases his claims under the MCPA and the MMFPA at ¶ 56 of his complaint.

The Plaintiff has stated his claims based on the Defendant's misleading statements and deceptions with the requisite particularity required by Rule 9. Defendant has more than sufficient details for it to prepare a defense to the Plaintiff's claims.

### 4. **PLAINTIFF HAS STATED A CLAIM UNDER THE MCDCA.**

It is true in *Piotrowski*, the Court rejected the borrower's claims under the MCDCA finding that the claims relating to the loan modification procedures did not affect Wells Fargo's contractual right to go forward with a foreclosure proceeding. However, the revocation requirements under ECOA, which have been asserted by

Kaswell, were not presented to the *Piotrowski* court. The issue before this court is whether or not a lender's failure to comply with ECOA notices that are required when revoking credit affect a contractual right to foreclose. Kaswell submits that it does affect the contractual right since all contracts are made subject to applicable law. This is especially true when it involves a consumer protection laws which provide protections that are generally not subject to waiver.

Moreover, the Deed of Trust also makes specific reference to federal law that "[a]ll rights and obligations contained in this security instrument are subject to any requirements and *limitations* of Applicable law." See Defendant's Exhibit 1, ¶ 16. (emphasis added).  ECOA sets forth a notice requirement before any revocation of credit is completed.  Plaintiff has alleged that he was not provided the required notice and therefore Wells Fargo's right to move forward with a foreclosure based on a revocation of the credit extended to Plaintiff was not legally proper. Wells Fargo did not have the right o go forward with the foreclosure before complying with ECOA. Therefore, it was asserting a right that did not exist which states a claim under the MCDCA.

**C. CONCLUSION**

The Plaintiff has stated claims under ECOA. These claims include the failure to provide adverse action notices for revocation of credit and denial of applications for loan modifications under 15 U.S.C.A. § 1691(d). Plaintiff has also set forth plausible claims under both the MCPA and MMFPA based on the Defendant's misrepresentations that have been sufficiently identified by time, manner and content in his complaint. The defendant has sufficient information from Plaintiff's complaint to prepare a defense. Last, the parties incorporate the limitations of federal law, which includes ECOA. Therefore, there is a plausible claim under the MCDCA because Defendant may not have

had the legal right to proceed with foreclosure until it complied with ECOA.   The

Defendant's motion should be denied or Plaintiff granted leave to file an amended

complaint.

Respectfully Submitted,

/s/ Scott C. Borison
Scott C. Borison, Esq. (Bar No. 22576)
borison@legglaw.com
Legg Law Firm, LLC.
5500 Buckeystown Pike
Frederick, Maryland 21703
(301) 620-1016
Fax: (301) 620-1018

CERTIFICATE OF SERVICE
       This is to certify that a true and correct copy of the foregoing documents
was served on the Defendant's counsel when filed through the Court's CM/ECF
system on January 8, 2014.

/s/ Scott C. Borison