IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOEL R. KASWELL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-13-2315 |
| WELLS FARGO BANK, N.A., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On September 20, 2012, the trustee to a one-million dollar mortgage loan filed a foreclosure action in state court, against the borrower, Joel R. Kaswell ("Kaswell" or "Plaintiff"). The foreclosure action is still unresolved. Subsequent to the filing of the state proceeding, Kaswell filed this lawsuit alleging various acts of misconduct by the lender, Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"). Kaswell asserts four claims under one federal and three Maryland state statutes: (1) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d) (Count I); (2) violation of the Maryland Consumer Debt Collection Act, Md. Code, Comm. Law § 14-202 (Count II); (3) violation of Maryland's Consumer Protection Act, Md. Code, Comm. Law § 13-101 (Count III); and (4) violation of the Maryland Mortgage Fraud Protection Act, Md. Code, Real Prop. § 7-401(d) (Count IV). Defendant thereafter filed a Motion to Dismiss for failure to state a claim (ECF No. 13). This Court has reviewed the parties' papers, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the Motion to Dismiss (ECF No. 13) is

GRANTED IN PART AND DENIED IN PART; specifically, the Motion is granted with respect to the three state claims, but it is denied to the extent the Complaint asserts a federal claim under the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(1).

## BACKGROUND

This Court accepts as true the facts alleged in Plaintiff's Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). On September 8, 2005, Kaswell entered into a one million dollar loan for the mortgage of his property. Def. Mot. to Dismiss, Ex. A, ECF No. 13-2.[1] Kaswell made timely payments on the loan until he suffered a severe accident.[2] Compl. ¶ 1. On December 2, 2010, Kaswell defaulted on the loan, and at some point before August 8, 2012, Wells Fargo began the proceedings for foreclosure. Def. Mot. to Dismiss, Ex. B, ECF No. 13-3.[3] Kaswell alleges that he submitted an 83-page packet in April of 2011 requesting a loan modification, but Wells Fargo employees repeatedly asked

---

[1] In reviewing a Rule 12(b)(6) Motion to Dismiss, this Court "may properly take judicial notice of matters of public record . . . [and] consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *See Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)); s*ee also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999))). As such, this Court takes judicial notice of "Exhibit A" (a copy of the Deed of Trust from September 8, 2005 from Defendant's Motion to Dismiss (ECF No. 13). This Court can consider "Exhibit A" in the Motion to Dismiss without converting the Rule 12(b)(6) Motion to Dismiss to a Rule 56 Motion for Summary Judgment because these exhibits are integral to the complaint, do not consider matters outside the pleadings, and are uncontested in the Plaintiff's Opposition, ECF No. 16.

[2] The extent of Plaintiff's injuries is not explained in any greater detail in the Complaint.

[3] This Court takes judicial notice of "Exhibit B" (an affidavit from a Wells Fargo employee detailing the date and nature of default filed in the state court foreclosure action). The relevant facts in the affidavit are uncontested by the Plaintiff in his Complaint or his opposition, specifically that Plaintiff was in default and that the trustee was initiating the foreclosure proceeding. The affidavit was entered into the public record as a part of the foreclosure proceeding. Thus, this Court can properly take judicial notice of Exhibit B based on the analysis laid out in footnote one. *See Schultz v. Braga*, 290 F. Supp. 2d 637, 651 n. 8 (D. Md. Oct. 13 2003) ("[C]ourts may not consider documents other than the complaint in deciding a motion to dismiss, unless the motion is converted to a motion for summary judgment. Courts have made 'exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" (citation omitted)).

Kaswell to resubmit documents for various reasons. Compl. ¶ 4. Kaswell claims he submitted documents at least twenty times, but lists eight specific dates on which Wells Fargo employees asked him to resubmit his application for loan remodification: May 24, 2011, July 7, 2011, September 6, 2011, January 31, 2012, February 7, 2012, April 11, 2012, June, 29 2012, and September 24, 2012. *Id.* ¶¶ 5-17.

Specifically, Kaswell claims that Cedrica Rhymes, a Wells Fargo employee, told him on April 17, 2012, that "his profit and loss submission was insufficient because it only showed a profit and no loss." *Id.* ¶ 16. On June 29, 2012, Ms. Rhymes also told him that his papers were "unavailable," "lost," and that Wells Fargo "do[esn't] keep them." *Id.* Kaswell further contends that in several letters Wells Fargo, through its employees, stated its "primary goal is helping [Plaintiff] to continue to experience pride of home ownership." *Id.* ¶ 2. Based on these continued requests for resubmission of documents, Kaswell alleges he was led "to believe that there was an imminent modification to be [sic] and the amount necessary to bring it current grew beyond measure." *Id.* ¶ 20. Kaswell claims that he relied on these "false representations" and continued to spend time and money attempting to save his home. Kaswell further alleges that Wells Fargo "had no interest in helping as it professed," but intended to "make the process so difficult and frustrating that he would simply give up." *Id.*

## **STANDARD OF REVIEW**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the

dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only

4

*allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In short, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 664.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.,* 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler,* 492 F. Supp. 2d 492, 509 (D. Md. 2007). A court "should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999).

## ANALYSIS

### I. Violation of the Equal Credit Opportunity Act

Count I of Plaintiff's Complaint asserts two claims under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691. *See Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549 (D. Md. July 22, 2013) (holding that § 1691(d)(1) and § 1691(d)(2) assert separate claims under the ECOA). A plaintiff may assert a claim under § 1691(d)(1) if a creditor does not notify an applicant of action on a completed application for

credit within thirty days of its receipt. 15 U.S.C. § 1691(d)(1). Additionally, an action under § 1691(d)(2) lies where a creditor takes adverse action against an applicant and does not provide the requisite statement of reasons.

### A. Violation of 15 U.S.C. A. § 1691(d)(1)

First, Kaswell asserts a claim under § 1691(d)(1), which provides that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). Wells Fargo asserts that "Plaintiff did not allege facts showing that he submitted a completed application for loan modification," Def. Mot. to Dismiss 6, ECF No. 13, and thus, the Defendant was not required to follow the guidelines laid out in Regulation B, 12 C.F.R. § 202.9. Wells Fargo further asserts that it is "well established that a lender's duty to respond to a request for credit under ECOA does not arise until the applicant submits a '*completed application* for credit.'" Def. Reply in Supp. of Mot. to Dismiss, ECF No. 19 (citing 15 U.S.C § 1691(d)(1) (emphasis added); *Riggs Nat'l Bank v. Webster*, 832 F. Supp. 147, 150 ( D. Md. 1993)).

In the Complaint, Kaswell alleges that he initially submitted an 83 page packet to Wells Fargo, which it requested he resubmit because they did not "timely act on his request." Compl. ¶ 4. Kaswell also specifically states that he "submit[ed] the documentation that Wells Fargo requested" in June of 2012. *Id.* ¶ 13. Thus, Kaswell does aver facts that suggest he submitted a completed application and Wells Fargo had a duty to respond under § 1691(d)(1).

Even still, Kaswell correctly notes that if Wells Fargo considered his applications incomplete, it "was under a duty to notify Plaintiff that he had submitted an incomplete

6

application." Pl. Opp. to Def. Mot. to Dismiss 4, ECF No. 16 (citing 12 C.F.R. (a)(1)(ii)). As Defendant points out, *Riggs* holds that "[a]n application is not 'complete' until the 'creditor has received all the information it regularly obtains and considers in evaluating applications.'" *Riggs*, 832 F. Supp. at 150. However, the case does not address what a bank is required to do if it receives an incomplete application. *See id.* Thus, Defendant's reliance on this case alone is insufficient.

Regulation B dictates that "within thirty days after receiving an application that is incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either" of the incompleteness of the application, or of any adverse action taken on the application. 12 C.F.R. (c)(1)(i-ii). In *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC-10-3517, 2011 WL 3476994, at *16 (D. Md. Aug. 8, 2011), the defendant asserted an argument similar to that of Wells Fargo in this case: that the plaintiff failed to allege in his complaint that his application was complete and thereby did not state a claim under § 1691(d)(1). This Court rejected this argument and denied the motion to dismiss with reference to a claim under §1691(d)(1) because a creditor has a duty to notify a lender if an application for credit is incomplete. *See Coulibaly*, 2011 WL 3476994, at *17 ("Creditors have an obligation to provide a timely response even to incomplete applications"). Specifically, Judge Chasanow of this Court cited to the relevant section of Regulation B: "[i]f additional information is needed from an applicant, the creditor shall send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application."

12 C.F.R. § 202.9(c)(1)(ii).  Plaintiff alleges that Wells Fargo continually requested him to resubmit the application, but did not notify Plaintiff that the applications were insufficient.  *See* Compl. ¶¶ 5-17.  Thus, Defendant's argument that Plaintiff's Complaint is lacking because it does not allege that Plaintiff submitted a completed application does not relieve Defendant of its duties under § 1691(d)(1).

Alternatively, Defendant asserts that because Plaintiff was in default at the time he made the loan modification, the defendant has no obligation under the ECOA.  However, this Court explicitly rejected this reasoning in *Piotrowski v. Wells Fargo Bank, N.A.*  Again, Judge Chasanow clearly explained a plaintiff in default can still assert a claim under §1691(d)(1).  *See Piotrowski, N.A.*, 2013 WL 247549, at *8 (finding that "the complaint states a plausible ECOA claim under Subsection 1691(d)(1)" despite the fact that the plaintiff admitted "that he was in default at the time.").  As such, the Plaintiff has alleged sufficient facts to infer a plausible claim under § 1691(d)(1) with respect to the creditor's alleged failure to provide notice of action on the application, and the Defendant's Motion to Dismiss with regard to this claim will be denied.

### B. Violation of 15 U.S.C. A. § 1691(d)(2)

Kaswell asserts a second claim under § 1691(d)(2), which states that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(1-2).  However, an adverse action "does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit." 15 U.S.C. § 1691(d)(6).  Despite the plain language of

the statute, Plaintiff asserts that "Defendant's acceleration of Plaintiff's note was a revocation of credit," Compl. ¶ 37, and thus qualifies as adverse action as defined by the EOCA, 15 U.S.C. § 1691(d)(6).  However, any claim by Kaswell under this section of the EOCA is misplaced because Kaswell was already in default when Wells Fargo accelerated his loan.  Any action taken by Wells Fargo does not fall within the definition of "adverse action" and cannot be governed by this section of the EOCA. *See Casey v. Litton Loan Servicing*, No. RDB–11–0787, 2012 WL 502886 (D. Md. Feb. 14, 2012) ("The case law on this matter is clear—a creditor need not provide an adverse action notification when it denies a loan modification request by a delinquent borrower." (citations omitted)).   The Defendant's Motion to Dismiss will be granted with regards to any §1691(d)(2) claim because there was no "adverse action" requiring a statement of reasons.

II. Violation of the Maryland Consumer Debt Collection Act

In Count II, Plaintiff contends Wells Fargo violated § 14–202(8) of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code, Comm. Law § 14-202, which provides "[i]n collecting or attempting to collect an alleged debt a collector may not . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Specifically, Plaintiff alleges that Wells Fargo attempted to foreclose Plaintiff's property with knowledge that it could not do so "under Maryland or Federal law until [it] complied with ECOA, the Maryland Equal Credit Protection Act, and Md. Code Regs.09.03.09.20." *See* Compl. ¶ 50.  However, Plaintiff's claim under the MCDCA fails as a matter of law based on this Court's ruling in *Piotrowski*, 2013 WL 247549, at *10.  In *Piotrowski*, the plaintiff asserted almost identical allegations to the ones in this case. *See id.* at *9.  This Court explicitly held

9

that the defendant has a right to foreclose a property based on the Deed of Trust notwithstanding any violations of state or federal statutes. *Id.* at *10 ("Even assuming that Wells Fargo violated the ECOA or its state analogue in connection with [Plaintiff's] loan modification requests, such violations would have no bearing on its contractual foreclosure rights."). Thus, the right of foreclosure exists based on Plaintiff's undisputed violation of the Deed of Trust. Defendant's alleged failure to comply with federal and state statutes does not interfere with Defendant exercising this right. *See id* at *10. As Plaintiff has alleged no facts to show that Defendant attempted to initiate a foreclosure action with the knowledge that the right did not exist, he has not adequately pled crucial elements of a claim under § 14–202(8) of the Maryland Consumer Debt Collection Act, and thus, this claim in Count II will be dismissed.

   III.  Violation of Maryland's Consumer Protection Act

In Count III of the Complaint, Plaintiff asserts violations of Maryland's Consumer Protection Act ("MCPA"), Md. Code, Comm. Law § 13-101. A plaintiff bringing a claim under the MCPA must allege: "'(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury.'" *Galante v. Ocwen Loan Servicing, LLC*, No. ELH-13-1939, 2014 WL 3616354, at *25 (D. Md. July 18, 2014) (citations omitted). Additionally, an MCPA claim, "is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'with particularity the circumstances constituting fraud.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

As to the first element of a claim under the MCPA, Plaintiff does not allege particular facts to suggest an unfair or deceptive practice based on misrepresentations according to the heightened pleading standard of Rule 9. "Under the MCPA . . . statements do not need to be false to be actionable. Rather, a representation that is merely misleading can constitute an unfair or deceptive trade practice." *See Piotrowski*, 2013 WL 247549, at *12. In this case, Plaintiff conclusively states Wells Fargo engaged in "acts and omissions . . . by making misrepresentations . . . and by failing to disclose material facts where the failure to do so deceived or tended to deceive." Compl. ¶ 58. Assuming that all facts alleged in the Complaint are true, the Plaintiff has only set forth that Wells Fargo made statements to the Plaintiff about wanting to help him obtain a loan modification, requiring him to resubmit documentation for the loan modification, and subsequently failing to grant a loan modification. *Id.* ¶ 56. He then asserts in conclusive statements that Wells Fargo "was not interested in helping [Plaintiff] obtain a loan modification," and that its "real goal was to make the process so difficult and frustrating that he would simply give up." *Id.* Plaintiff failed to allege any *facts* to support the assertions he makes about Wells Fargo's intentions with regards to his loan modification. As such, the Plaintiff fails to meet the pleading standard of Rule 9 to show that Defendant's statements were actual misrepresentations. *See Farsat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197, 206 (D. Md. 2012) (dismissing a claim under the MCPA because the plaintiff "merely alleged that [Defendant's] statement was a misrepresentation," but failed to allege *how* the statement constituted a misrepresentation).

Plaintiff also asserts that Wells Fargo engaged in "omissions . . . by failing to disclose material facts where the failure to do so deceived or tended to deceive." Compl. ¶ 58.

However, "a mere failure to disclose a material fact does not constitute fraud under Maryland law. Rather, an alleged failure to disclose must ordinarily be accompanied by a legal duty to disclose." *Castle v. Capital One, N.A.*, Civ. A. No. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014) (citing *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D. Md. 2013). Plaintiff has failed to identify the omissions which Wells Fargo supposedly made, and he also has not set forth in the Complaint any suggestion that Wells Fargo was under a duty to disclose the alleged omissions. As such, the Plaintiff has not alleged fraud based on omissions.

While Plaintiff's claim fails to properly allege a misrepresentation or omission under the MCPA, Plaintiff also fails to allege reliance which caused him actual injury. Plaintiff's only alleged reliance was that he spent "time and costs" resubmitting documents at Wells Fargo's request. Plaintiff does not allege that Wells Fargo ever made a representation that his loan modification would be approved or that he had ever resumed payment on his loan during the time he sought a loan modification. Plaintiff's status under his current loan was not impacted by his reliance on these supposed misrepresentations because he was already in default before he applied for a loan modification. *See Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 255-56 (D. Md. 2013) (dismissing claim under MCPA because the plaintiffs did not allege the "Defendant specifically directed them to do, or to refrain from doing, anything that adversely affected the state of affairs that existed prior to the alleged misrepresentations."). Nor does Plaintiff's vague allegation with respect to "costs" related to resubmitting documents change this Court's analysis. *See Butler v. Wells Fargo Bank, N.A.*, No. MJG-13-2705, 2013 WL 3816973, at *6 n. 9 (D. Md. July 22, 2013) ("With respect to

[Plaintiff] filling out paperwork and working with [Defendant] in pursuit of the loan modification, the Amended Complaint contains no allegations that this resulted in 'compensable loss, such as lost wages due to time away from work.'" (citing *Green*, 927 F. Supp. 2d at 257)).

Additionally, Plaintiff alleges "emotional distress or mental anguish suffered with or without accompanying physical injury." Compl. ¶¶ 20, 59.  A claim of damages under the MCPA can include "'emotional or mental anguish' so long as there was '"at least a consequential physical injury' in the sense that 'the injury for which recovery is sought is capable of objective determination.'" *See Butler*, 2013 WL 3816973, at *3 (*citing Hoffman v. Stamper*, 867 A.2d 276, 295 (Md. 2005)).  However, Plaintiff does not allege facts to connect any physical injury to the supposed misrepresentations made by Defendant.  Thus, the alleged mental anguish and physical injury are not enough to constitute damages in a claim under the MCPA.[4]  *See Green*, F. Supp. 2d at 257 ("[T]he absence of any clear reliance by Plaintiffs on Defendant's misrepresentations makes the causal connection between any misconduct and these [physical] symptoms too tenuous.").  Therefore, even if this Court takes all of the alleged facts as true, Plaintiff does not state a claim under the Maryland Consumer Protection Act, and this claim in Count III will be dismissed.

### IV. Maryland Mortgage Fraud Protection Act

---

[4] Under Rule 9 of the Federal Rules of Civil Procedure, a claim for certain matters, like fraud, must be stated with "particularity," including reliance and damages. *See Galante v. Ocwen Loan Servicing, LLC*, No. ELH-13-1939, 2014 WL 3616354, at *25 (D. Md. July 18, 2014) (dismissing claims sounding in fraud because the plaintiff had not adequately pled reliance and damages, but allowing other claims to move forward under the more liberal pleading standard of Rule 8). Similarly, in this case, the Plaintiff's Complaint does not allege reliance or damages sufficient to constitute a claim arising out of fraud because the Complaint lacks the requisite particularity of facts. However, the Complaint does sufficiently allege a § 1691(d)(1) claim under the ECOA because damages are not an element of that cause of action. Moreover, the § 1691 claim is assessed under the normal Rule 8 pleading standard.

Lastly, Plaintiff asserts a claim in Count IV under the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code, Real Prop. § 7-401(d). The statute defines mortgage fraud as:

> Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

Md. Code Ann. Real Prop. § 7-401(d)(1) (West 2011). Additionally, a plaintiff must show reliance and actual damages based on the misrepresentations. S*ee generally Ademiluyi v. PennyMac Mortgage Inv.Trust Holdings, LLC*, 929 F. Supp. 2d 502 (D. Md. 2013). Kaswell asserts that Wells Fargo knowingly made both affirmative misrepresentations and omissions to his detriment. Compl. ¶ 68. As discussed in reference to Kaswell's Maryland Consumer Protection Act claim, he has not sufficiently pled any misrepresentations or omissions. In fact, Kaswell does not set forth any facts that if taken as true show Wells Fargo knowingly made statements with the intent that Kaswell rely on the statements. Additionally, as discussed in detail with reference to his MCPA claim, Kaswell fails to allege reliance on Wells Fargo's statements based on the particularity requirements under Rule 9 because he does not show that he took any specific actions other than submitting documents. These actions did not impact the status of his loan because he had already been in default for approximately four months. As such, Kaswell does not allege any facts that suggest he suffered any compensable damages based on his alleged reliance, and Count IV under the Maryland Mortgage Fraud Protection Act is dismissed.

## CONCLUSION

For the reasons stated above, Defendant Wells Fargo Bank N.A.'s Motion to Dismiss (ECF No. 13) is GRANTED IN PART AND DENIED IN PART; specifically, the Motion is granted with respect to Counts II, II, and IV, and Count I asserting a claim under the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(2) with respect to a statement of reasons; and the Motion is denied with respect to Count I asserting a claim under the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(1) with respect to notice.

A separate Order follows.


Dated:   August 6, 2014                         /s/
                                         Richard D. Bennett
                                         United States District Judge